CARR, J.
“Partnership,” we are told, “is a voluntary contract between two or more persons, for joining- together their money, goods, labour and skill, or either or all of them, *upon an agreement that the gain or loss shall be proportionally divided between them, and having for its object, the advancement and protection of fair and open trade.” Let us examine the agreement before us, and see how it comports with this definition. The first part of it, certainly, imports a lease of the ferry for two years, in consideration of 1000 dollars paid by the lessee to the lessor before the commencement of the lease, with an agreement on the part of the lessor, to furnish good and sufficient boats, a hand to assist on extraordinary occasions, and board &c. for the ferryman to be employed by the lessee, at the rate of 20 dollars a year. And if the agreement had stopt there, all must have agreed, that it had not a single feature of a partnership. The doubt arises upon the stipulations contained in the sequel of the agreement. Do they- change the character of the contract, and convert it from a contract of lease into one of copartnery ? Where is the community of interest, the community of profits, the community of possession, in the social subject ? The first part of the contract expressly stated, that Bowyer leased the ferry to Peamster, for the full term of two years, to commence nine months after the date of the contract, when possession was to be given : that surely meant a several exclusive tenancy in Peamster, not that joint tenancy which partners have. The latter part of the contract nowise changed that feature of it: it not only contemplated the continuance of Peamster’s possession for two years, but expressly stated, that if within that term he should not receive 2000 dollars, he should remain, and keep full possession, until he should make that intire sum. So far, there was certainly nothing social, either as to possession or profits. But it was added, that if during the two years, Peamster should receive more than 2000 dollars, the surplus should be divided equally between him and Bowyer : and this, it was contended, gave that participation in the profits, which made it a partnership. I cannot think so. It is a participation purely contingent, and seems to have been thrown in simply as some counterpoise to the provision which *enabled Peamster to hold beyond the two years, if he should not within that time make the 2000 dollars. In 3 Kent’s comm. 8, we find it laid down upon authority, that “the contract, must be for the common benefit of all the parties to the association, and though the shares need not be equal, yet, as a general rule,' all must partake Of the profit, in some rateable proportion, and that proportion, as well as the mode of conducting the business, may be modified and regulated by private agreement, at the pleasure of the parties.” Upon every view I can take of the subject, there was no partnership here, and consequently, .no right in the plaintiff to recover of Bowyer for the default of Peamster.
There is a feature in this contract between Bowyer and Peamster, which, it seems to me, may go a good way in explaining its nature. The consideration of the agreement was 1000 dollars, advanced and paid by Peam-ster at its date, though his lease was not to commence till nine months after. Ren1 s are the fruits, the returns, of land ; and it is very rarely that we see them paid in advance. Is it not natural to suppose, that Bowyer, being pressed for the immediate use of the money, fell upon this scheme for raising it, by anticipating the profits of his ferry; and that Peamster, seeing his necessity, took advantage of it, to insist on holding the lease, till he should receive from it double the sum advanced ? It was thought two years would give this sum : but Peamster was determined to make assurance doubly sure, and therefore, had the provision inserted, that, if from the expenses incurred, or damages from accidents, he should not receive 2000 dollars, within the two years, he should hold on till he should receive that sum : and then Bowyer added, that if during the two years, more than 2000 dollars should be received, the surplus should be divided. This maybe called conjecture ; but it seems to me, the natural and probable explanation of the transaction ; and I mention it as another consideration to shew that no partnership adventure was intended.
*BROOKE, P.
There may be a partnership in a ferry ; hut, as a ferry is not ordinarily the subject of partnership and trade; the terms of the contract by which it is made so, ought to be more clear than in cases in which the subject is one of ordinary trade and partnership. It is not uncommon in farming leases, which are somewhat analogous to a lease of a ferry, that the rent is stipulated to be paid in a certain portion of the profits ; yet no partnership is inferred from that circumstance. The lessor is not subjected to any claim for the expenses of cultivation &c. In the contract before us, the consideration paid by Teamster was the 1000 dollars : no partnership account was necessary to ascertain that. The stipulation in the lease, that if, in the event, he received more than 2000 dollars, within the term of two years, the surplus profits were to be divided between the parties, was entirely contingent; and the interest of Bowyer in them could not be considered as making him a partner in the whole trade of the ferry. It was only intended by the parties, to apportion the rent more nearly to the value of the ferry, in an event which, for aught that appears, never happened. A communion of interest in the profits and loss of a trade, is essential to a partnership. Coope v. Eyre, 1 Hen. Black. 37. There was no such communion of interest in this case. Peamster had paid his 1000 dollars in advance ; and was to receive 2000 dollars in the profits of the ferry after deducting loss by accidents, such as freshes &c. and if not in two years, he was to hold over until he did receive that sum in those profits. Bowyer had no common interest in the profits ; he was not to receive a cent of íhem. I think the circuit court erred in its instructions to the jury.
CABEBL, J., concurred.